J-A01038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF MICHAEL VALLIERE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THOMAS SALMON | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1001 EDA 2024 |

Appeal from the Order Entered March 4, 2024
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): 2023-A9104

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED NOVEMBER 14, 2025**

Thomas Salmon ("Salmon") appeals from the order denying his petition to adopt Michael Valliere ("Valliere"), an adult, after the trial court determined it would require consents from Valliere's natural mother and current adoptive stepfather. Because Salmon has not demonstrated an error of law or an abuse of discretion, we affirm.

The relevant background to this appeal is as follows. Salmon is currently eighty-three years old, lives in Doylestown, is unmarried, and has no children. Valliere is forty-four years old, is married, has two children, and lives with his family in Furlong. Valliere's natural father died in 1986. Valliere's natural mother, Deborah Valliere ("Deborah"), remarried Steven Valliere ("Steven") (collectively, "Valliere's parents"), and Steven adopted Valliere when Valliere was a child.

Salmon and Valliere met approximately twenty-five years ago through an online investment club. Valliere was starting college at that time, and after meeting in person, their mentor/mentee relationship grew closer. *See* N.T., 1/24/24, at 11-12. Salmon helped Valliere during the "ups and downs" and "challenges" of college. *Id*. at 12. After Valliere started his own family, Salmon became an "integral part" of it. *Id*. Salmon has spent the holidays with Valliere and his family. *Id*. Valliere has sent Salmon Father's Day cards for nearly a decade, and Valliere's children call Salmon "grandpa." *Id*. Salmon moved to be closer to Valliere and his family, and he helped Valliere's wife and daughter when Valliere and his son vacationed abroad. *See id*. at 8, 12-13.

In September 2023, Salmon filed a petition to adopt Valliere and attached, in relevant part, consents signed by Valliere and Valliere's wife. At the time of filing, Valliere's parents were alive and still married to each other, and they lived in New Hampshire.[1]

At the hearing on Salmon's petition, Salmon described Valliere as the person he "feel[s] closest to," and who has "been a good friend, [and] someone [he] could confide in," and "trust and rely upon." *Id*. at 8. Salmon explained he wanted to adopt Valliere because it would reflect their

_____

[1] Salmon later filed an amended petition to include a copy of Valliere's birth certificate. There has been no indication of a change in status of Valliere's parents during the pendency of this appeal.

relationship and, depending on his health, he could need assistance in the future. *See id*. at 10.[2]

Throughout the hearing, the trial court expressed its concerns about how the proposed adoption would affect the legal relationship between Valliere and Valliere's adoptive stepfather, Steven. *See id*. at 4-5. When the court asked Valliere whether Steven consented to the adoption by Salmon, Valliere responded that Steven was aware of the adoption proceeding but did not sign a consent to adoption. *See id*. at 14.[3] At the conclusion of the hearing, the trial court requested Salmon's counsel to submit a post-hearing brief on how

_____

[2] Valliere testified at the hearing consistent with the factual summary set forth above, and while he stated adoption would honor the relationship he had with Salmon, we note that he did not expressly testify to his willingness to assist Salmon if Salmon's health failed.

[3] Specifically, the trial court and Valliere discussed Valliere's adoptive stepfather in the following exchange:

> THE COURT: Okay. Have the parental rights of [Steven] been terminated or parental relationship ever been terminated by a [c]ourt [o]rder?
>
> [Valliere]: No, Your Honor.
>
> THE COURT: Is he aware of this proceeding?
>
> [Valliere]: Yes, Your Honor.
>
> THE COURT: Did he sign a consent to adoption?
>
> [Valliere]: He did not sign anything, no.

N.T., 1/24/24, at 14.

Salmon's adoption of Valliere would affect Valliere's existing parental relationships, and counsel complied.[4]

By the order entered March 4, 2024, the trial court denied Salmon's petition to adopt Valliere. The order indicated that Valliere currently has an adoptive stepfather, Steven, who remains married to Valliere's natural mother, and that the denial of the petition would not impede Salmon and Valliere's existing relationship. *See* Order, 3/4/24, at 1.

Salmon timely appealed on April 2, 2024,[5] and both he and the trial court complied with Pa.R.A.P. 1925. In its Rule 1925(a) opinion, the trial court explained it denied Salmon's petition because the proposed adoption would

---

[4] The record does not include a copy of the post-hearing brief filed by Salmon's counsel, although Salmon's appellate brief included a copy of the post-hearing brief as an exhibit. The post-hearing brief addressed the issue of Valliere's adoptive stepfather's consent, but only to the extent that the Adoption Act did not require his consent.

[5] The trial court suggested Salmon's appeal was untimely because the court denied the petition to adopt on March 1, 2024, and Salmon filed his notice of appeal on April 2, 2024. However, Pa.R.A.P. 108 states that "the date of entry of an order in a matter subject to the Pennsylvania Rules of Orphans' Court Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.O.C.P. 4.6." Pa.R.A.P. 108(c). Here, the docket states the clerk gave written notice of the order on March 4, 2024. *See* Docket, Seq. 9. Therefore, Salmon had thirty days from March 4, 2024, or until April 3, 2024, to file an appeal. *See* Pa.R.A.P. 903(a). Accordingly, Salmon's April 2, 2024 notice of appeal was timely.

not create a new family unit and Salmon did not provide consents from Valliere's parents. *See* Trial Court Opinion, 5/30/24, at 5.[6]

Salmon raises the following issues for our review:

\* \* \* \*

I.    Did the [trial] court commit an error of law by denying the statutory right of adoption to two consenting adults?

II.   Did the [trial] court commit an error of law when it concluded that an adult, by virtue of an involuntary adoption while a young child, was . . . not eligible to be adopted as an adult by a proposed adoptive parent of his choosing?

III.  Did the [trial] court abuse its discretion by overriding and/or misapplying the law in denying an adoption petition to consenting adults because the proposed adult adoptee had been adopted once before, at a young age, by a stepfather who remains married to proposed adoptee's natural mother?

IV.   Did the [trial] court abuse its discretion by its manifestly unreasonable denial of an adoption decree to two consenting adults?

Salmon's Brief at 4 (renumbered).[7]

This Court has summarized our scope of review of an order denying adoption as follows:

_____

[6] The trial court also stated it was "not convinced of the competency and truthfulness of [Salmon and Valliere] as to their reasons underlying the requested adoption," and the court expressed its concern over the "potential financial exploitation" of Salmon. Trial Court Opinion, 5/30/24, at 1 n.1, 8 n. 7.

[7] Salmon's brief presented an issue concerning the timeliness of his appeal. Because we have addressed that issue above, *see supra* n.5, we have not included it in our recitation of Salmon's questions involved in this appeal.

In matters arising under the Adoption Act,[8] our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.

*In re Adoption of K.B.*, 311 A.3d 1166, 1169 (Pa. Super. 2024) (internal citations and quotation marks omitted), *appeal denied*, 319 A.3d 506 (Pa. 2024).

Adoption is a statutory right, and a challenge based on how the trial court applies the Adoption Act presents a question of law, over which our standard of review is *de novo*. *See In re Adoption of J.M.B.*, 308 A.3d 1262, 1267 (Pa. Super. 2024). However,

> [w]hen the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

*In re Jackson*, 174 A.3d 14, 23 (Pa. Super. 2017) (internal citation omitted).

The Adoption Act permits adoptions between adults ("an adult adoption"). *See* 23 Pa.C.S.A. §§ 2311-2312 (stating that "[a]ny individual

_____

[8] *See* 23 Pa.C.S.A. §§ 2101-2938.

- 6 -

may be adopted, regardless of his age" and "[a]ny individual may become an adopting parent"). The statutory requirements for adoption are as follows. Section 2701 governs the form and contents of a petition to adopt and mandates, among other things, that "all consents required by section 2711 (relating to consents necessary to adoption) [be] attached as exhibits or the basis upon which such consents are not required." 23 Pa.C.S.A. § 2701(7); *see also* Pa.R.O.C.P. 15.13(b)(2).

Section 2711, in turn, provides:

**(a) General rule.--**Except as otherwise provided in this part, consent to an adoption shall be required of the following:

(1) The adoptee, if over 12 years of age.

(2) The spouse of the adopting parent, unless they join in the adoption petition.

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

(4) The guardian of an incapacitated adoptee.

(5) The guardian of the person of an adoptee under the age of 18 years. . . .

23 Pa.C.S.A. § 2711(a). Thus, if the adoptee is eighteen years of age or older and not incapacitated, the Adoption Act does not require the consent of the adoptee's parents, or guardian, *see* 23 Pa.C.S.A. § 2711(a), and there is no corresponding requirement for the party seeking adoption to attach such consents to the petition. *See* 23 Pa.C.S.A. § 2701(7).

The Adoption Act, however, affords the trial court with discretion when considering a proposed adoption. Section 2901 states: "Unless the court for

cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met." 23 Pa.C.S.A. § 2901;[9] *In re Adoption of R.B.F.*, 803 A.2d 1195, 1202 (Pa. 2002). Furthermore, section 2902(a) requires the trial court to decide whether the needs and welfare of the adoptee will be promoted by the proposed adoption. *See* 23 Pa.C.S.A. § 2902(a).[10]

On appeal, Salmon's four merits issues challenge the trial court's denial of his petition to adopt Valliere, and we summarize his arguments together. Salmon claims he met all statutory requirements for adopting Valliere, and the trial court erred by requiring him to provide consents from Valliere's mother and current adoptive stepfather, Steven, when the Adoption Act did not require such consents. *See* Salmon's Brief at 14-15. Salmon observes

_____

[9] We note that Section 2901 refers to other conditions that clearly apply to children and do not apply to adult adoptions, namely, an investigation under 23 Pa.C.S.A. § 2535 and the report of an intermediary under 23 Pa.C.S.A. § 2533. *See* 23 Pa.C.S.A. § 2901; *see also* 23 Pa.C.S.A. §§ 2533 (discussing reports of intermediaries who arranged the adoption placement of a child under the age of eighteen years), 2535 (discussing investigation requirements concerning a child's eligibility for adoption and the suitability of placement). Salmon does not assert that section 2901 should only apply to adoptions of a child, and we decline to address the applicability of section 2901 to an adult adoption *sua sponte*.

[10] Moreover, pursuant to section 2713, "[the trial] court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when . . . the adoptee is over 18 years of age." 23 Pa.C.S.A. § 2713(a).

that because Valliere is an adult, and not incapacitated, the Adoption Act does not require consents from Valliere's parents. *See id*. at 15.

Salmon does not dispute that the trial court, in its discretion, may require consents not expressly required by the Adoption Act. *See* Salmon's Brief at 15. However, he contends that the trial court abused its discretion in the present case. Salmon initially argues that if the trial court wanted consents from Valliere's parents, it should have asked for them before denying the petition. *See id*. at 15-16. Salmon concludes the trial court thus "waived" any right to require consent from Valliere's parents. *See id*. at 16.

Salmon further claims that it was an abuse of discretion for the trial court to deny the proposed adoption between two consenting adults where consents from Valliere's parents were not statutorily required or requested by the court. *See id*. at 16-17, 20-21. Salmon suggests that because his adoption petition met all of the statutory requirements, and it was clear that he and Valliere intended to enter into a parent/child relationship, the role of the trial court should have been largely ministerial. *See id*. at 18-19 (analogizing an adult adoption consented to by the proposed adoptee and person adopting to the ministerial act of performing a marriage).[11]

_____

[11] Salmon also contends there was no evidence that Valliere's natural mother and current adoptive father, Deborah and Steven, opposed Salmon's adoption of Valliere. Salmon argues the record did not support the trial court's suggestion that Steven, "would not sign a consent," where the only testimony was that Steven "did not sign" anything related to the proposed adoption. *See* Salmon's Brief at 16 (discussing Trial Court Opinion, 5/30/24, at 2
*(Footnote Continued Next Page)*

The trial court, in its Rule 1925(a) opinion, outlined the requirements and procedures for adoption and did not dispute that Salmon had met the statutory requirements for petitioning the court to approve an adult adoption. *See* Trial Court Opinion, 5/30/24, at 2, 4-7. The trial court noted the goal of adoption is the creation of a new family unit, and the court had an obligation to determine the consents necessary to approve an adoption. *See id*. at 6. The court reasoned that it could, in its discretion, require consents from an adult adoptee's parents and reject a proposed adoption if consents were not forthcoming. *See id*. at 2, 7-9. Because Salmon did not obtain consent from Valliere's parents, in particular Steven, and did not show why he could not do so, the trial court concluded its denial of Salmon's petition was proper. *See id*. at 8-9.

Following our review, we conclude Salmon has not shown a reversible error of law or abuse of discretion. Initially, Salmon has not identified an error in the trial court's application of the Adoption Act. *See J.M.B.*, 308 A.3d at 1267. Salmon correctly notes the Adoption Act does not require consent of the adoptee's parents when the adoptee is a competent adult. However, the trial court did not conclude parental consent was a statutory requirement. Rather, the court emphasized that its decision to require the consent of

_____

(indicating Steven "would not sign a consent to this adoption, which was of concern . . ..") and N.T., 1/24/24, at 14 (indicating Steven "did not sign anything" related to the proposed adoption)). However, Salmon, in his brief, does not argue that the trial court's order should be vacated to reopen the record to show Steven did not refuse consent or would consent to the adoption. *See* Salmon's Brief at 16, 23.

Valliere's parents was a matter of discretion, a point which Salmon essentially concedes. *See* Trial Court Opinion, 5/30/24, at 2, 4-7; Salmon's Brief at 15 (stating that "[o]ther consents are not required, although the [c]ourt may request other consents").

To the extent Salmon challenges the trial court's exercise of discretion when requiring consents from Valliere's parents, we cannot agree with his broadside assertion that the trial court's role should have been ministerial under the circumstances of this case. The Adoption Act vests considerable discretion in the trial court beyond simply ensuring validity of consent and intent in an adult adoption. *See* 23 Pa.C.S.A. § 2902(a); *see also* 23 Pa.C.S.A. § 2901. Absent focused arguments that it was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, for the trial court to have required consents from Valliere's parents, Salmon cannot carry his heavy burden of demonstrating an abuse of the trial court's discretion.[12] *Cf*. *Jackson*, 174 A.3d at 23.

Order affirmed.

_____

[12] Salmon contends any speculation about the potential for abuse or exploitation in Salmon and Valliere's proposed adoptive relationship lacked any support in the record and should not have overridden the court's duty to act favorably on his petition. *See* Salmon's Br. at 19. However, because the trial court denied Salmon's petition based on the absence of Valliere's parents' consent, the issue in this appeal is whether the trial court erred or abused its discretion in requiring those consents. As Salmon has not persuaded this Court that the trial court abused its discretion, we conclude no relief is due in this appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/14/2025</u>